UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JAMARIO H.,[1] <br>     Plaintiff, <br> v. <br> KILOLO KIJAKAZI, <br>     Defendant. | Case No. 20-cv-09244-RMI <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 27, 31 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for supplemental security income under Title XVI of the Social Security Act. *See* Admin. Rec. at 15-26.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-5), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 2 & 12), and both parties have moved for summary judgment (dkts. 27 & 31). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in seventeen attachments to Docket Entry #26. *See* (dkts. 26-1 through 26-17).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

In January of 2018, Plaintiff filed an application for Title XVI benefits alleging an onset date of November 1, 2014. AR at 15. On May 6, 2020, the ALJ entered an unfavorable decision denying Plaintiff's application and finding him not to be disabled. *See id.* at 25-26. In October of 2020, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-5. Two months later, in December of 2020, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated.

**SUMMARY OF THE RELEVANT EVIDENCE**

This case concerns the disability application of a deeply troubled young person with a lengthy history of entanglements with the criminal justice system (including being the victim of a gunshot wound, and spending most of his early years in juvenile prison) coupled with a long list of grave mental impairments that the ALJ found to be severe. *See* AR at 17-19. Plaintiff was treated as a child for attention deficit hyperactivity disorder ("ADHD") and depression; he has been repeatedly hospitalized for suicidality; for most of his life, he has experienced nightmarish auditory hallucinations that command him to kill himself; and, he has a lengthy and documented

history of psychotic behavior. *See id*. at 21. As to the incarceration that marked most of his childhood, Plaintiff was incarcerated no fewer than six separate times during his youth. *See id*. at 331.

The record contains spotty information about Plaintiff's mental disorders because most of the medical information in the record evidence is either from the records of emergency department visits or from jail records – notably, Plaintiff has not been under the consistent care of a treating psychotherapist, and neither did his attorney nor did the ALJ arrange for a consultative examination in this regard. Consequently, while the record contains substantial information that documents Plaintiff's many mental impairments, the record is utterly devoid of any reliable or evidence-based opinions about the ensuing limitations caused by the combination of Plaintiff's mental impairments. Accordingly, because the court will remand the case for further record development, the following is a statement of the evidence that sheds light on the need for such a remand.

As early as 2008, when he was only 10 years old, Plaintiff already had a documented history of psychiatric hospitalizations, through which he was diagnosed as suffering from severe cases of posttraumatic stress disorder ("PTSD") and depression. *See id*. at 735-44. In 2009, when he was 11 years old, Plaintiff was again involuntarily hospitalized – this time, the chief cause was (as it would be on subsequent occasions) for suicidality. *See id*. at 622-32 (Plaintiff was hospitalized in March of 2009 because of auditory hallucinations directing him to kill himself). When he was 14 years old (in February of 2013), Plaintiff was admitted to the emergency room and he was involuntarily detained for a 72-hour period due to a suicide event. *See id*. at 312. On that occasion, Estela Hernandez, M.D., noted that "[h]e tried to hang himself w[ith] [a] cord earlier today[,] [his] [s]tepfather caught him before he jumped off [the] chair." *Id*. During the same episode, another physician, Karl Adler M.D., found that Plaintiff continued to manifest a high degree of risk for self harm. *Id*. at 323. On another occasion, Plaintiff was once again involuntarily committed after his mother called the police to report that Plaintiff was on the roof while experiencing auditory hallucinations directing him to jump off the roof and kill himself. *Id*. at 329. Doctors diagnosed him with an unspecified psychotic disorder on this occasion. *Id*. at 331. When

3

1    Plaintiff was discharged from one episode of psychiatric hospitalization (in April of 2013), Kiran
2    Koka, M.D., diagnosed him with psychotic disorder and dysthymic disorder; however, like
3    Plaintiff's other medical records, Dr. Koka's discharge summary did not venture to opine as to
4    what limitations attended Plaintiff's condition (other than assessing Global Assessment of
5    Functioning, "GAF," scores of 26 at admission, and 50 at discharge). *See id*. at 484-87.
6        On another occasion, in May of 2015 Plaintiff was taken to the emergency department in
7    law enforcement custody due to having punched a wall during a fit of anger. *Id*. at 365. In
8    September of 2017, "while strongly endorsing his desire to commit suicide," Plaintiff reported his
9    lifelong history of suffering auditory hallucinations. *Id*. at 391. On this occasion, Wendy Feng,
10   M.D., noted that Plaintiff "has a chronically elevated risk for self-harm which includes chronic
11   mental illness and [a] history of suicide attempts and self-harm." *Id*. at 392. During one of his
12   several bouts of involuntary hospitalization for suicidality, Plaintiff's "chief complaint," was noted
13   in his own words as such: "I just wanted to get rid of the voices." *Id*. at 488. On that occasion, Dr.
14   Koka noted that Plaintiff's auditory hallucinations "are quiet during the daytime but in the evening
15   and at night they get loud and they give him commands[,] [t]hey tell him to kill himself [and] [h]e
16   has been feeling that the voices are beginning to take control of his actions and he has been getting
17   scared." *Id*. Thereafter, later in 2017, Plaintiff was still viewed as occupying a high degree of risk
18   for self-harm and suicide. *See id*. at 1312-20, 1340-42.
19       The ALJ in this case did not contact any of the physicians that treated Plaintiff during the
20   years between 2008 and 2017. Nor did the ALJ order any consultative examinations in order to
21   investigate the nature and extent of the limitations caused by Plaintiff's mental impairments.
22   Instead, the ALJ simply adopted the baseless findings of two non-examining state agency
23   consultants – Drs. Pinkston and Stephenson – who had opined that Plaintiff could work so long as
24   he was limited to working independently while performing simple and routine tasks in a stable
25   environment. *See id*. at 24. Ultimately, this is how the unfounded estimation of Drs. Pinkston and
26   Stephenson shaped the ALJ's formulation of Plaintiff's residual functioning capacity ("RFC"). *See*
27   *id*. at 20-24.
28   //

4

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920; *see also id*. at § 404.1520). While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 16-17.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i),[3] which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ determined Plaintiff had not performed substantial gainful activity since his application date. AR at 17.[4] At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: bipolar I disorder; adjustment disorder; generalized anxiety disorder; depression; PTSD; and, ADHD. AR at 16-17.

---

[3] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the Title II regulations herein unless it is necessary to note otherwise.

[4] As to the temporal scope of the ALJ's findings in this case, those findings were tethered to Plaintiff's application date (January 31, 2018) instead of his alleged onset date (November 1, 2014). *See e.g., id*. at 17 (finding Plaintiff had not engaged in SGA since the application date); *see also id*. at 25 (finding that Plaintiff has not been disabled since his application date).

5

1  At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or
2  combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*
3  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe
4  impairments that are considered to be sufficiently severe to prevent any individual so afflicted
5  from performing any gainful activity. *Id*. at § 404.1525(a). Each impairment is described in terms
6  of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. at §
7  404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it
8  must meet all of the specified medical criteria; and, an impairment that manifests only some of
9  those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493
10 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more
11 impairments are determined to be medically equivalent to the severity of that set of criteria, that
12 person is conclusively presumed to be disabled without a consideration of age, education, or work
13 experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an
14 impairment or combination of impairments that meets or equals the criteria or the severity of any
15 of the listings. *See* AR at 19-20.

16 If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's RFC,
17 which is defined as the most that a person can still do despite the limitations associated with their
18 impairments. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the
19 ability to perform the full range of work at all exertional levels – but with the following non-
20 exertional limitations: Plaintiff was limited to simple and routine tasks; limited to working
21 independently, with other individuals in the immediate vicinity, but where only incidental
22 interactions would be required in order to accomplish the work; Plaintiff would need to work in a
23 stable environment, meaning that there would be few changes, if any, in the day-to-day work
24 setting and in the tools and/or work process used to accomplish the work. AR at 20-24.

25 Following the formulation of the RFC, the ALJ must determine – at step four – whether the
26 claimant is able to perform his past relevant work, which is defined as "work that [the claimant
27 has] done within the past 15 years, that was substantial gainful activity, and that lasted long
28 enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ

1 determines, based on the RFC, that the claimant can perform her past relevant work, the claimant

2 will not be found disabled. *Id*. § 404.1520(f). Otherwise, at step five, the burden shifts to the

3 agency to prove that the claimant can perform a significant number of other jobs that are available

4 in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on

5 the Medical-Vocational Guidelines (commonly referred to as "the grids"), 20 C.F.R. Pt. 404

6 Subpt. P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert

7 ("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in

8 response to hypothetical questions about whether a person with the physical and mental limitations

9 imposed by the claimant's medical impairment(s) can meet the demands of the claimant's

10 previous work, either as the claimant actually performed it or as generally performed in the

11 national economy, or the demands of other jobs that may be available in the national economy. *See*

12 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources for this purpose, such as the

13 Dictionary of Occupational Titles ("DOT"). *Id*.

14 Here, the ALJ determined that Plaintiff would not be able to perform his past relevant

15 work because he had no past relevant work. *See* AR at 24. Lastly, at step five, the ALJ determined

16 – based on the VE's testimony – that Plaintiff would have been able to perform the functions of a

17 hand packager, a marker, or a routing clerk. *Id*. at 25. Accordingly, the ALJ determined that

18 Plaintiff had not been disabled at any since January 31, 2018, his application date. *Id*.

## DISCUSSION

20 The record in this case is woefully underdeveloped. So much so that the court cannot

21 intelligently decide any of the issues raised by Plaintiff. Plaintiff has been clearly suffering from a

22 host of serious mental impairments, but the record is nearly completely silent as to the meets and

23 bounds of the limitations caused by these impairments. While it appears to the court that Plaintiff

24 is likely disabled and unable to work in any capacity, it is not the province of this court to engage

25 in that sort of guesswork or speculative adventure. For this court to enter such a finding, there

26 must be an evidentiary foundation upon which to rest such a conclusion.

27 Under the regulations that apply to Plaintiff's application, ALJs are required to evaluate the

28 "persuasiveness" of all medical opinions according to several factors (*see* 20 C.F.R. § 416.920c).

1  The first two factors, supportability and consistency, are considered the most important, and the
2  ALJ is required to explicitly address them in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2).
3  The ALJ "may, but [is] not required to," explain how he or she considered the remaining three
4  factors listed in the regulations. *Id*. Although the regulations have eliminated the physician
5  hierarchy, deference to specific medical opinions, and assigning certain weight to any given
6  medical opinion, the ALJ must still articulate how he or she considered the medical opinions and
7  how persuasive he or she finds all of the medical opinions. *See V.W. v. Comm'r of Soc. Sec.*, No.
8  18-cv-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020); 20 C.F.R. § 416.920c(a),
9  (b).  As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation
10  must be supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the
11  Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be
12  conclusive.").

13  Here, the ALJ found that the opinions of two non-examining state agency consultants (Drs.
14  Pinkston and Stephenson), to the effect that Plaintiff's mental impairments caused mild limitations
15  that yielded a fairly expansive RFC, were "persuasive and consistent with the record." *See* AR at
16  24. The undersigned disagrees and finds that the undeveloped state of the record rendered it
17  impossible for the ALJ to make any such a finding that might be coupled with any quantum of
18  substantial evidence. In other words, the court finds that the residual functioning opinions of Drs.
19  Pinkston and Stephenson (and, by extension, the RFC) were arbitrarily formulated and were
20  totally unsupported by anything that could be considered substantial evidence. Substantial
21  evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to
22  support a conclusion." *Biestek*, 139 S. Ct. at 1154 (2019). The court has carefully and
23  meticulously reviewed each of the 1,363 pages that comprise the record in this case, and nowhere
24  therein is there any evidentiary support that might lead a reasonable mind to agree with the
25  residual functioning opinions of Drs. Pinkston and Stephenson – and, therefore, the ALJ's
26  determinations from step three onwards. Thus, the ALJ's determinations at step three, the
27  formulation of the RFC, and the ALJ's non-disability finding at step five were all erroneous
28  because they were unsupported by substantial evidence, and because they were rendered on a

woefully incomplete record.

The ALJ has a special duty to fully and fairly develop the record such as to assure that the claimant's interests are considered. *See generally Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is incumbent on the ALJ even when the claimant is represented by counsel. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Additionally, an ALJ's duty to engage in still further record development is triggered when there is a suggestion of mental impairments (as was the case here), or where there is ambiguous evidence (as was the case here), or when the record is inadequate to allow for proper evaluation of the evidence (as was the case here). *Id*. (citing *Tonapetyan*, 242 F.3d at 1150). Where this duty arises, the ALJ may discharge it "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*.

Accordingly, on remand, the ALJ is **ORDERED** to convene another evidentiary hearing at which Plaintiff (and any other interested witness) should be asked detailed and specific questions about Plaintiff's work-related abilities. The ALJ is **FURTHER ORDERED** to arrange for no fewer than two consultative examinations (one by a licensed clinical psychologist, and another by a clinical psychiatrist) both of which shall examine Plaintiff personally in addition to being given access to Plaintiff's medical records. These evaluations should be, at least in part, geared towards evaluating Plaintiff's abilities (if any) to function in the workplace while presenting a clear picture of Plaintiff's cognitive and emotional health. *See e.g.*, *Vasquez v. Comm'r of Soc. Sec.*, No. 1:18-cv-01042-EPG, 2019 U.S. Dist. LEXIS 132871, at *12 (E.D. Cal. Aug. 6, 2019) ("The Court thus directs the ALJ upon remand to further develop the record by obtaining a consultative examination by a physician regarding Mr. Vasquez's impairments of generalized anxiety disorder and bipolar disorder and obtaining that physician's opinion regarding what work-related limitations are necessary to account for these impairments. With the benefit of that opinion, the ALJ shall reconsider his conclusion that there are jobs that exist in significant numbers in the national economy that Mr. Vasquez can perform."); *see also Molina v. Berryhill*, No. 2:17-CV-01991 CKD, 2018 U.S. Dist. LEXIS 206463, 2018 WL 6421287 (E.D. Cal. Dec. 6, 2018) (remanding the

case to the ALJ to obtain a consultative examination by a physician who had access to plaintiff's medical records); *see also Shipp v. Colvin*, No. CV 13-9468 JC, 2014 U.S. Dist. LEXIS 137911, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since, apart from [non-examining consultative] opinions, the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record."). Thus, with the benefit of these opinions, the ALJ is directed to reengage the sequential evaluation process from step three onwards.

Because the court is remanding this case for substantial further development of the record, the court declines to reach Plaintiff's other issues. Initially, the court will note that it appears likely that the calculus underlying Plaintiff's other issues will substantially change on remand. Second, because the case is already being remanded for further proceedings on the ground that the ALJ did not properly develop the record, the court finds it unnecessary to address Plaintiff's remaining issues as the issues seeking the immediate payment of benefits are wholly meritless because they call for a great deal of speculation and assumption on the court's part. For example, Plaintiff's claims that the ALJ erred in determining that Plaintiff does not meet listings 12.04 and 012.15, and his claim that the record shows marked impairments in various domains, are unsupportable. Given the current state of the record, Plaintiff's suggestions call for the court to impose its lay opinion in place of what should have been expert opinion based on accepted clinical and diagnostic techniques for arriving at such conclusions – instead, Plaintiff suggests that his marked limitations are obvious. *See generally* Pl.'s Mot. (dkt. 27) at 11-15. As for Plaintiff's other issues that pertain to the ALJ's evaluation of his testimony, or the ALJ's evaluation of medical evidence, or the formulation of the RFC (*see id*. at 6-11, 15-16), those can adequately be addressed on remand, and any additional rulings here will not secure for Plaintiff any relief beyond what has already been granted. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

In any event, on remand, the Commissioner is **ORDERED** to carefully consider the other

issues raised in Plaintiff's briefing and to modify the ensuing ALJ opinion (if any) such as to reflect the fact that all the issues raised in this case by Plaintiff have been considered and addressed. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 U.S. Dist. LEXIS 52225, at *16-17 (N.D. Cal. Mar. 19, 2021).

## CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (dkt. 27) is **GRANTED**, Defendant's Cross-Motion (dkt. 31) is **DENIED**, and the case is remanded for further proceedings consistent with the findings, conclusions, and instructions set forth herein.

**IT IS SO ORDERED.**

Dated: September 15, 2022

ROBERT M. ILLMAN
United States Magistrate Judge